RECEIVED

FEB - 8 2012

TONY R. MOORE, CLERK
BY_____
      DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

UNITED STATES OF AMERICA

versus                                    CRIMINAL NUMBER 10-0233-05
                                          JUDGE TOM STAGG
TROY WILSON

## MEMORANDUM RULING

Before the court is a motion filed by Troy Wilson ("Wilson") pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside or correct his sentence. See Record Document 274. Based on the following, Wilson's motion is **DENIED.**

## I. BACKGROUND

### A.    Factual Background.

In 2009, the Department of Homeland Security, United States Secret Service Office, began an investigation into a counterfeit check cashing scheme in Dallas, Texas. This scheme involved many people in several jurisdictions with real checks from real business accounts being compromised and counterfeited. There were two types of people involved in the scheme. One set was known as the "handlers" and the others were known as the "passers." The handlers would recruit homeless people, provide them with a hotel room, obtain their personal information, pass this information on to the check maker or printer who would then create counterfeit checks. The passers were given counterfeit payroll checks in the amounts of $1,200

to $1,500 with their personal information printed on the checks. The handlers would then transport these passers to various cities in Arkansas, Louisiana, Mississippi and Texas in order to cash these counterfeit checks. See Record Document 247 at 4.

Wilson and eight other individuals were charged for their involvement in the counterfeit scheme. See Record Document 1. Wilson's role in the scheme was one of handler. He traveled to Ruston, Louisiana, from the Fort Worth, Texas, area with a co-defendant and at least one other individual in an attempt to pass a counterfeit check at a local bank in Ruston. When one of the passers, Calvin Jimmerson, ("Jimmerson") was apprehended at the bank in Ruston, he immediately told the officers the type of vehicle to be looking for and that information was relayed to the Louisiana State Police. The vehicle was stopped in Bossier Parish approximately twenty minutes later. See Record Document 285 at 14. Wilson and his co-defendant along with another passer, Carl Payne ("Payne"), were in the vehicle. A search of the vehicle revealed additional counterfeit checks made payable to both passers, Payne and Jimmerson. See id. at 15.

## B.    Procedural History.

On July 29, 2010, Wilson was indicted in three counts of an eighteen count indictment.  Wilson was charged with one count of conspiracy of possessing counterfeited securities and two counts of possessing counterfeited securities of an organization affecting interstate commerce for the purpose or with the intent to deceive another person or organization, in violation of 18 U.S.C. § 371. The other fifteen counts of the indictment charged Wilson's co-defendants with individual

2

instances of violation of 18 U.S.C. § 513. See Record Document 1.

On November 19, 2010, Wilson pled guilty to count seventeen of the eighteen count indictment. See Record Documents 142 and 143. On March 16, 2011, Wilson was sentenced. See Record Documents 225 and 226. No objections were made to the presentence report, and on April 6, 2011, judgment was entered, reflecting that Wilson was sentenced to 33 months imprisonment followed by a three year term of supervised release, which was within the guideline range contained in the presentence report. Wilson was ordered to pay restitution in the amount of $204,202.40 jointly and severally with his eight co-defendants. See Record Document 226.

On April 19, 2011, Wilson filed a notice of appeal from the judgment entered on April 6, 2011. See Record Document 237. On April 20, 2011, Wilson's counsel, Joseph M. Clark, filed a motion to withdraw as counsel and to enroll new counsel for the appeal. See Record Document 238. Also on April 20, 2011, Wilson filed a pro se motion for new trial complaining of issues regarding his sentencing, challenging the loss amount and the application of points for a leadership role in the offense. He asserted that his trial counsel misunderstood the sentencing guidelines. See Record Document 239. This court issued a memorandum order on May 10, 2011, denying Wilson's motion for new trial, finding that Wilson's guilty plea foreclosed a Rule 33 motion to attack the validity of the guilty plea or the conviction, that the motion was not timely filed, and that the court lacked jurisdiction because of Wilson's previously filed notice of appeal. See Record Document 252.

On June 22, 2011, the Fifth Circuit Court of Appeals dismissed Wilson's

3

appeal "for want of prosecution. The appellant failed to timely pay the docketing fee, order transcripts, and make financial arrangements with the court reporter." The mandate was issued on June 22, 2011. See Record Document 264. On October 11, 2011, Wilson filed the instant motion, pro se. See Record Document 274.

## II. LAW AND ANALYSIS

### A. Ineffective Assistance Of Counsel.

To prevail on a claim of ineffective assistance of counsel, Wilson must prove that (1) his counsel's actions fell below an objective standard of reasonableness and (2) his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the Strickland analysis, the court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Wilson may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066.

Under the second prong of the Strickland test, Wilson must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. To

4

satisfy the prejudicial prong of the <u>Strickland</u> test in the context of a non-capital sentencing proceeding, Wilson must establish that he would have received less time in prison. <u>See</u> <u>United States v. Grammas</u>, 376 F.3d 433, 438 (5th Cir. 2004). If Wilson fails to establish either prong of the <u>Strickland</u> test, then his claim of ineffective assistance of counsel must fail.

### 1.   Guilty Plea.

Wilson first alleges that his counsel provided him erroneous advice about his potential sentence and this rendered his plea involuntary. He alleges that his retained counsel, Joseph M. Clark, Sr., told him that he would receive a sentence of probation for the alleged violation. Wilson asserts that he was given a guarantee he would receive probation and would not have signed or pled guilty otherwise.

Because this claim of ineffective assistance of counsel is in the context of a guilty plea, Wilson must comply with <u>Hill v. Lockhart</u>'s amendment to the <u>Strickland</u> criteria. He must prove prejudice by demonstrating that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). However, Wilson has failed to meet this standard.

Wilson entered his plea of guilty to count 17 of the indictment on November 19, 2010. During the hearing, Wilson denied that anyone had "leaned" on him or used any undue persuasion to cause him to plead guilty. Wilson indicated that he had read the indictment and was pleading guilty because he was, in fact, guilty of the check cashing scheme. <u>See</u> Record Document 285 at 7-8. The court and Wilson had

5

the following exchange regarding his guilty plea and the sentencing guidelines:

Court:    Mr. Wilson, refer, if you will, to the paragraph on the second page of D subtitled "Sentencing." It says here that you understand that the maximum punishment on Count 17 is a 10-year term and a fine of $250,000, or both, and a special assessment of $100 that's payable right now. That's what the law says is the maximum. But have you and Mr. Clark discussed guidelines and guidelines sentencing procedures?

Wilson:    Yes, Your Honor.

Court:    Would you hand that. Mr. Wilson, have you seen a piece of paper like that? Down the left-hand side of the page are 1 through 43. Those are the grades to the offenses against the laws of the United States. Across the top of that page, you will seen Roman numbers I through VI. That's how bad is the offender. First time offenders are in column one. An occasional conviction will put you in column two. A bunch of convictions and trouble will put you all the way over to six. Every time there is a number, it's in a parenthesis and a bracketed number of months. That's the guidelines sentencing sheet that the judge starts with when he confects a sentence. You go down that left-hand column and then you go in the first or the subsequent. Where those two columns cross, there will be a couple of months in brackets and that's the beginning point of the sentence. I don't know where on that chart you belong. That won't be known to me until I read your presentence report. But have you and Mr. Clark discussed that chart at all?

Wilson:    Yes, Your Honor.

Court:    Did he give you his professional opinion as to where he thought you might be on that chart?

Wilson:     Yes, Your Honor.

Court:      Did anybody make you – Mr. Clark or the Government –
            make you a promise of what your sentence would be if
            you pled guilty?

Wilson:     No, Your Honor.

Court:      So all you know about sentencing right now is what Mr.
            Clark told you he thought about where you belong on that
            chart?

Wilson:     Yes, Your Honor.

Court:      All right.  I just didn't want you standing there with an
            expectation that you shouldn't have.  The sentencing will
            come up here.

            I can use those numbers, or I can depart upward from
            those numbers, or I can depart downward from those
            numbers.  But those numbers are where I start.  And I just
            wanted to make sure you understood the concept.  Do
            you?

Wilson:     Yes, Your Honor.

Id. at 8-10.

Wilson alleges that he was promised a sentence of just probation by his counsel

even though he indicated otherwise during the hearing.  However, even if Wilson's

assertion is true, "[a]n erroneous estimate by counsel as to the length of sentence" is

not "necessarily indicative of ineffective assistance."  Beckham v. Wainwright, 639

F.2d 262, 265 (5th Cir. 1981).  An attorney's "good faith but erroneous prediction of

a sentence . . . does not render the guilty plea involuntary."  Johnson v. Massey, 516

7

F.2d 1001, 1002 (5th Cir. 1975); <u>see also</u> <u>United States v. Stumpf</u>, 827 F.2d 1027,

1030 (5th Cir. 1987) ("[A] defendant's reliance on his attorney's erroneous prediction

of leniency is not sufficient to render a guilty plea involuntary."); <u>United States v.</u>

<u>Harmon</u>, 139 F.3d 899 (5th Cir. 1998) (finding that the defendant could not "claim

that his guilty plea was involuntary based upon his attorney's erroneous prediction

about the length of the sentence"); <u>United States v. Gracia</u>, 983 F.2d 625, 629 (5th

Cir. 1993).  As the Fifth Circuit explained in <u>Daniel v. Cockrell</u>, 283 F.3d 697 (5th

Cir. 2002):

> [a] guilty plea is not rendered involuntary by the
> defendant's mere subjective understanding that he would
> receive a lesser sentence. In other words, if the defendant's
> expectation of a lesser sentence did not result from a
> promise or guarantee by the court, the prosecutor or
> defense counsel, the guilty plea stands. Likewise, a guilty
> plea is not rendered involuntary because the defendant's
> misunderstanding was based on defense counsel's
> inaccurate prediction that a lesser sentence would be
> imposed.

<u>Daniel</u>, 283 F.3d at 703.

Even when an attorney erroneously estimates his client's potential sentence,

the defendant must satisfy the prejudice requirement by showing that "there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59, 106 S. Ct. at 370;

<u>Stumpf</u>, 827 F.2d at 1030.  Deficient representation alone is insufficient to obtain

relief on an ineffective assistance of counsel claim.  <u>Strickland</u> requires both a

deficiency of counsel and resulting prejudice.

Wilson cannot show prejudice in light of his affirmative statements in court and the court's specific admonitions to him. Wilson was specifically advised regarding the statutory maximum sentence for the count to which he was pleading and he stated that he understood the available range of punishment. At no point did Wilson refuse to plead guilty or express any objection when faced with this information. Thus, he cannot now contend that his guilty plea was in reliance upon some alternative characterization of his sentence exposure given to him by his counsel.

Furthermore, Wilson represented to the court during the plea colloquy that no one made him any promises as to what his sentence would be. Sworn statements in open court at guilty plea hearings "carry a strong presumption of verity." United States v. Palmer, 456 F.3d 484, 491 (5th Cir. 2006) (citations and quotations omitted); see also United States v. Adam, 296 F.3d 327, 333 (5th Cir. 2002); United States v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly). Wilson's arguments in his motion are belied by the signed Ruled 11 package presented during the hearing, signed by both Wilson and his counsel, and by statements made during the guilty plea. The court finds no ineffective assistance of counsel as to this claim.

**2.    Failure To Investigate**.

Wilson also alleges that he is innocent of the alleged offense and his counsel refused to investigate claims or present a defense to the charges. He claims that his

9

counsel failed to investigate by failing to interview his co-defendant. Wilson provided an affidavit executed by his co-defendant, Fred Taylor ("Taylor"), in which Taylor states that Wilson had no knowledge of the check cashing scheme. Taylor also acknowledged that he gave or may have given contradictory statements to the government before the date of the affidavit. See Record Document 274, Ex. 2.

Even when a petitioner who asserts claims of recanting witnesses provide affidavits from those witnesses, the affidavits are viewed with "extreme suspicion." Summers v. Dretke, 431 F.3d 861, 872 (5th Cir. 2005); United States v. Adi, 759 F.2d 404, 408 (5th Cir. 1985). Taylor's affidavit was signed July 5, 2011. Wilson entered a voluntary guilty plea on November 19, 2010. Wilson's counsel cannot be deemed ineffective for failing to interview a cooperating government witness when that witness has not yet recanted and does not recant his testimony until after Wilson has plead guilty and been sentenced. Wilson told the Court during his guilty plea that he was guilty of this offense. The transcript of Wilson's hearing shows the following:

> Court:    Are you pleading guilty because you are in fact guilty of
>           this check cashing business?
>
> Wilson:   Yes, Your Honor.

See Record Document 285 at 8.

In addition, under the Fifth Circuit's general standards, a witness's recanted testimony warrants a new trial only when: 1) such evidence is discovered after trial; 2) the failure to learn of the new evidence was not caused by petitioner's lack of due diligence; 3) the evidence is not merely cumulative or impeaching; 4) the evidence

is material; and 5) a new trial would probably produce a new result. See United States v. Nixon, 881 F.2d 1305, 1311 (5th Cir. 1989). Even if each of the other elements were met, Wilson has not established the last element: that a new trial would likely produce a different result. Accordingly, after careful review of Wilson's motion and the supporting affidavit, the court also finds no ineffective assistance of counsel as to this claim.[1]

## B.   Sentencing.

Wilson also argues that the district court failed to properly apply the United States Sentencing Guidelines. Wilson asserts that the court gave the sentencing guidelines undue weight. However, Wilson's claims with respect to the application of the guidelines and any weight the court does not give rise to a constitutional issue cognizable under section 2255. See United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994); United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). The item about which Wilson complains does not implicate any constitutional issue. See Segler, 37 F.3d at 1134 (citing United States v. Faubion, 19 F.3d 226, 233 (5th Cir. 1994)). Moreover, this claim could have been (and it appears from the record that it

---

[1]Wilson also complains that his counsel was ineffective for failing to advise or counsel him regarding the presentence report, for failing to object to the presentence report and for failing to be present for his interview by the probation officer. However, the sentencing transcript belies Wilson's assertions with regard to his allegation of failure to counsel him regarding the presentence report. Furthermore, an attorney is not ineffective when he fails to raise a meritless argument, and Wilson has not identified any basis for filing objections to the presentence report. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999). Finally, Wilson has made no attempt to explain why such failures, if true, might have resulted in prejudice under Strickland.

was not) raised on direct appeal. See Vaughn, 955 F.2d at 368 (a nonconstitutional claim that could have been raised on direct appeal, but was not, may not be raised in a collateral proceeding). Accordingly, Wilson is not entitled to section 2255 relief as to this claim.

### III.  CONCLUSION

Wilson's various complaints regarding his sentencing and ineffective assistance of counsel claims under section 2255 fail. Therefore, his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the ____ day of February, 2012.

_____
JUDGE TOM STAGG

12